Troup *against* The Executors of Smith.

THIS was an action of *assumpsit*, brought against the executors of *John Smith*, deceased. The declaration contained five counts: The first count stated, that the plaintiff, being seised of a township of land, in the town of *Ossian*, county of *Alleghany*, and being desirous of having the same surveyed into lots of convenient size, for the purpose of enabling him to sell the same, with exactness and certainty, to settlers desirous of purchasing lots, and also to convey the same to purchasers, with accuracy and certainty; the testator, in his life time, being a surveyor of land, and following the business and occupation of a surveyor of land, on the 10th of *May*, 1816, at *Bath*, in the county of *Steuben*, in consideration that the plaintiff, at the special instance and request of the testator, in his life time, had then and there retained and employed him, in the way of his said occupation and business of a surveyor of land, (supposing, always, that he would act in a skilful and faithful manner,) to survey the said township of land into lots of convenient size, to enable the plaintiff to sell the same with accuracy, &c. And also to make and deliver to the plaintiff, particular, accurate and true field-notes of the said survey; and also to make and deliver to the plaintiff a particular, exact, and true map of the said township, and of the several lots composing the same, to be founded on, and conformable to the said survey, for a reasonable reward, to be therefor paid by the plaintiff to

In an action of *assumpsit*, for negligence, want of skill, and fraud, in the performance of work, the defendant pleaded the statute of limitations: *Held*, that the plaintiff cannot reply a fraudulent concealment of the badness of the work by the defendant, so that the plaintiff did not discover the fraud until within six years before the commencement of the suit, so as to deprive the defendant of the protection of the statute. Though a replication must not depart from any material allegation in the declaration, yet where the plea is evasive, the plaintiff may avoid the effect of it, by restating his cause of action with more particularity and certainty; and thus meet and thwart the particular defence set up.

Though an action will not lie against executors or administrators, for a fraud of the testator, which does not benefit the *assets;* yet it will lie against his representatives, on a contract fraudulently performed by him.

the testator. He, the testator, being such surveyor, then and there, &c., undertook and faithfully promised the plaintiff, to survey, in a skilful and faithful manner, and with accuracy, exactness, and certainty, the said township of land, into lots of convenient size, &c. ; and also to make and deliver to the plaintiff, particular, accurate, and true field-notes of the said survey ; and also to make and deliver to the plaintiff, a particular, exact, and true map, &c., within a reasonable time, &c. *Nevertheless*, the testator, *John Smith*, not regarding his said promises, &c., did not perform the same in a skilful and faithful manner, &c. ; but, on the contrary, performed the same in a grossly unskilful and unfaithful manner, that is to say, by neglecting to survey and mark all the lines of each of the said lots, to ascertain and fix with precision the quantity of land contained in each of the said lots, to prevent the lines of the said lots from encroaching upon, and interfering with each other ; to state, with accuracy and truth, the kind and quantity of all the timber, the kind and quality of the soil of each of the said lots; and to state with truth, and also to delineate and lay down with accuracy, on the map of the said township, all the streams of water running in and through the said several lots, or parts thereof, with the several mill-seats thereon ; whereby the said survey of the said township, by the said *John Smith*, was rendered so grossly deficient in truth and accuracy, as to be entirely unfit and unsafe for the use of the plaintiff ; which caused the said survey of the said township to be wholly useless and unprofitable to the plaintiff, and thereby put and subjected him to very great loss and damage, not only by being long hindered and delayed in the sale of divers of the said lots, to settlers, who were willing to purchase the same, &c. but, also, by being forced to pay, lay out, and expend, a large sum of money, to wit, 1500 dollars, in procuring a particular, accurate, exact, and perfect survey of the said township, to be performed and made by another surveyor having competent skill, diligence, and integrity, for that purpose, &c. The plaintiff then alleged, that he, afterwards, on the 16th of *December*, 1816, paid to the testator, in his life time, the sum of 1500 dollars, as a reasonable reward for his services, in performing and making the said survey, &c. ; and

which sum the testator received in full satisfaction for the same; by reason whereof, &c.

The second, third, and fourth counts, were also special; the *fifth* count was for money lent, money paid, and money had and received, &c. and an *insimul computassent*, &c.

The defendant pleaded, 1. *Non assumpsit*; 2. *Actio non accrevit infra sex annos*: 3. *Plene administravit*. The plaintiff replied to the second plea as to the first count, that he ought not, by reason of any thing in that plea alleged, to be barred, &c., because, he said, that the said *John Smith*, the testator, in his life time, surveyed the said township of land fraudulently and deceitfully, in this, that he did not run and mark some of the lines between many of the lots, in any manner whatsoever; that some of the lines, in many of the lots, were so badly and imperfectly run and marked, that the same could not be traced; that some of the lines, of many of the lots, interfered with, and intersected each other; that the courses of many of the lots were not marked or designated by any monuments whatever; and that others were, otherwise, so badly and unskilfully marked, that the quantity of land contained in some of the lots was not ascertained and fixed with exactness; and that some of the streams of water running in and through the several lots, with the mill-seats thereon, were not delineated and laid down on the map of the said survey: from all which causes, the said survey became useless and unprofitable to the plaintiff. And further, that at, and immediately before the payment, by the plaintiff, of the said sum of 1500 dollars, to wit, on the 30th of *December*, 1816, the said *John Smith*, fraudulently and deceitfully, showed and delivered to the plaintiff, certain false and incorrect field-notes, maps, or plats of the said survey of the said township, from which it appeared that the said survey had been performed in a good, skilful, sufficient, and workmanlike manner, according to the true intent and meaning of the promise and undertaking of the said *John Smith*. And further, that the said township of land, at the time of the survey thereof, consisted of land in a state of nature, and was covered with timber, trees, and underbrush, and that by reason thereof, and of the said false and incorrect field-notes, maps, and plats, purporting, never-

theless, to be true and correct, &c. the said fraud and deceit were not discovered by the plaintiff, until a long time after said contract was to be performed, and after parts of the said township had been contracted to be sold by the plaintiff, to settlers, to wit, on the 1st of *May*, 1818, &c.

There were also several replications to the same plea, as to the second, third and fourth counts, which were substantially the same as to the first.

There was a *general demurrer* to the replications.

*J. C. Spencer*, in support of the demurrrer, contended,

1. That the replications were a departure from the declaration. (1 *Chitty's Pl.* 618, 619.)

2. That the replications were double, inconsistent, contradictory, and uncertain.

3. That the matter of excuse set up in avoidance of the plea of the statute of limitations, was insufficient, and no answer to the plea. The plaintiff does not say that the cause of action did not accrue until within six years, but merely that he did not discover it until within that time.

4. That the action, sounding in *tort*, died with the testator, and did not survive against his executors. (1 *Johns. Rep.* 403. *Cowp.* 371. 1 *Com. Dig.* 172. 196. 1 *Morgan's Vade Mecum*, 276.) It is an action for *deceit*, and *not guilty* would have been a proper plea. (Lord *Raym.* 973. 1 *Caines*, 124.) An action of debt for an escape does not lie against the executor of a deceased sheriff. Though the form of this action be *assumpsit*, yet it is, in substance, for a *tort*. It is an exception to the general rule as to actions of *assumpsit*. Where things imply a wrong in themselves, or any misfeasance, the rule applies, *actio personalis moritur cum persona*. (*Baily* v. *Butler*, *T. Raym.* 72.)

*Butler*, and *Talcot*, (A. G.) contra, insisted, 1. That the action would lie against the executors. Anciently, the maxim *actio personalis moritur cum persona*, was applied to almost all actions *ex contractu*, in which a wager of law was allowed. But for the last two centuries, in *England*, more liberality has prevailed, and every action arising *ex contractu*, or where *assumpsit* is a proper form, survives against

executors. (1 *Chitty's Pl.* 92, 93. 2 *Chitty's Pl.* 94. *Morgan's Prec.* 84. 3 *Went. Plead.* 322. 384. 389. 2 *Bac. Abr.* tit. *Executors,* &c. (p. 2.) *Toller's Law of Executors,* 352.) An action may arise *ex contractu,* yet partake of a *tort* or *delictum* in the breach of it; and though an action for a *deceit* would lie, yet the plaintiff may waive the *tort,* and bring *assumpsit.* (1 *Chitty's Pl.* 90. 99. 132. 138, 139. 3 *Dallas,* 357. 15 *Johns. Rep.* 475.) An action on the case will lie, and so will *assumpsit ;* and the latter is now considered as the most appropriate remedy. (9 *Co.* 89. *a.* Sir *T. Raym.* 71. *Saville's Rep.* 40. *Cro. Car.* 539.) In *Hambly* v. *Scott,* the cases were fully examined, and Lord *Mansfield* laid down, in the clearest and most satisfactory manner, a just and equitable rule on this subject. (*Cowp.* 371. 377. 1 *Chitty's Pl.* 56, 57.) In *Utterson* v. *Vernon,* (3 *Term Rep.* 549.) Lord *Kenyon* recognises the distinction taken by Lord *Mansfield,* that where a person is guilty of a *tort,* as by cutting down trees, and then dies, no action lies against his representatives, for *damages* arising from the tortious act ; though the *value* of the timber may be recovered out of his assets. (1 *Saund.* 216, 217. n. 1.)

Again : a bill in equity may be filed against an *executor,* for a *fraud* committed by his testator. (3 *Atk.* 757. 1 *Madd. Ch.* 205.) And there is, as was observed by Lord *Mansfield,* a great analogy between this action of *assumpsit* and a bill in equity.

Again : in *Harison* v. *Walker,* (*Peake's Cas.* 111.) where *B.,* a bankrupt, had received money on a bill which he had fraudulently obtained from *A.,* and afterwards a commission of bankruptcy issued against him : Lord *Kenyon* held, that *A.* might recover back the money from the assignees of *B.,* in an action of *assumpsit ;* yet the assignees of a bankrupt are no more liable for the *torts* or *frauds* of the bankrupt, than executors are for the torts of their testator.

2. The *replication* is not a departure from the declaration. Where a plea is *evasive,* the plaintiff may avoid the effect of it by *restating* the cause of action, or by a new assignment. (1 *Chitty's Pl.* 602. *Shippey* v. *Henderson,* 14 *Johns. Rep.* 178. 180.) In the case of the *First Mass. Turnpike Com-*

*pany* v. *Field*, (3 *Mass. Rep.* 201.) it was decided, that a fraudulent concealment by the defendant, that a cause of action had accrued to the plaintiff, was a good replication to a plea of the statute of limitations.

3. Nor is there any duplicity or uncertainty in the replication; but if there were, it cannot be taken advantage of on a general demurrer. (1 *Chitty's Pl.* 572, 573. 625, 626.)

4. But the great objection is, that the replication is no answer to the plea; or, in other words, that fraud will not take a case out of the statute of limitations. The statute ought to be strictly construed. If the plea in this case is to prevail, it is obvious that great injustice will be done. Fraud is not within the equity or spirit, nor within the terms of the statute. In the interpretation of the statute, it is fairly to be supposed that the legislature intended to except fraud from its protection. (*Vattel*, B. 2. c. 17. s. 282. 291. 299.) To permit a defendant who has by his own fraudulent concealment prevented the plaintiff from discovering his cause of action, to plead the statute in bar, would be repugnant to the clearest principles of law and equity.

The statute cannot be pleaded to a bill for the discovery of fraud, as length of time forms no bar, in such case. (1 *Madd. Ch.* 205. 3 *Atk.* 558. 2 *Ves.* jun. 280. 3 *Johns. Ch.* 216. 6 *Wheaton's Rep.* 293.) So, in the construction of the statute of frauds, a Court of equity considers a *part performance* as taking a case out of the statute, and gives relief on the ground of *fraud*, in refusing to perform, after suffering a performance by the other party. (1 *Madd. Ch.* 300. 302. 14 *Johns. Rep.* 35.) Courts of law and equity have a concurrent jurisdiction in matters of fraud. The action of *assumpsit* is like a bill in equity. *Fraud* constitutes an exception to all general rules, and the party who is guilty of it, is not allowed to shelter himself under the general rule of law. (*Phillips' Evid.* 426. 428. *Doug.* 654. 4 *Yeates' Rep.* 109. 1 *Hayw. Rep.* 16. 2 *Hayw.* 129. 4 *Dessas. Rep.* 179, 180. 4 *Munf.* 444. 8 *Cranch*, 93. 3 *Mass. Rep.* 371. 3 *P. Wms.* 143. 13 *Vin. Abr.* 542. tit. *Fraud*, Z. pl. 3. *Fowler* v. *Hunt*, 10 *Johns. Rep.* 64. *Domat*, B. 3. s. 5. n. 9. 4 *Bro. P. C.* 163. *Cas. temp.*

*Talb.* 61. 69. 2 *Sch. & Lef.* 631. 634. 1 *P. Wms.* 742. *Bull. N. P.* 150. *Str.* 907. 2 *Saund.* 117. *Willes,* 259. note. 3 *Bl. Com.* 309. note 9. *Bac. Abr.* tit. *Limitation of Actions,* D. 3.)

*J. C. Spencer,* in reply. It is immaterial when the plaintiff discovered the fraud ; for fraud, in a *Court of law,* is not a good replication to a plea of the statute of limitations. In *Bree* v. *Holbeck,* (*Doug.* 654.) Lord *Mansfield,* to be sure, says, " There may be cases, too, which fraud will take out of the statute of limitations." But this is a mere *obiter dictum.* It was not a point decided in the case. The cases cited from Chancery are those of trusts. *Sugden* (*Law of Vendors,* &c. 241, 242. 2 *Madd. Ch.* 245.) refers to them, to show that in equity the statute of limitations does not bar a *trust,* as between the parties. No matter whether there be fraud or not; the rule in equity is broad and general. The statute does not apply in cases of trusts. The statute is considered as not binding a Court of Chancery; but that Court adopts it, as a reasonable rule, to be applied in analogous cases. (2 *Madd. Ch.* 244.) Will this Court adopt this rule of equity, with all its consequences, and say, that the statute of limitations does not apply to any case of money lent or paid in trust ? In *Hoveden* v. *Lord Annesley,* (2 *Sch. & Lefr.* 631, 632, 633.) Lord *Redesdale* examines the doctrine of Courts of equity on this subject. He says, " Courts of equity are bound to yield obedience to the statute of limitations, upon all legal titles and legal demands, and cannot act contrary to the spirit of its provisions. The statute must be taken virtually to include Courts of equity ; for when the legislature by statute limited the proceedings at law, in certain cases, and provided no express limitations for proceedings in equity, it must be taken to have contemplated that equity followed the law ; and, therefore, it must be taken to have virtually enacted, in the same cases, a limitation for Courts of equity also."—" That wherever the legislature has limited a period for law proceedings, equity will, in analogous cases, consider the equitable rights as bound by the same limitation." And he states the qualifications and distinction as to the general principle that " trusts and

fraud are not within the statute."—" If," says he, " a trustee is in possession, and does not perform his trust, his possession operates nothing in bar, because his possession is according to his title."—" But the question of fraud is of a very different description ; that is, a case where a person who is in possession by virtue of that fraud, is not, in the ordinary sense of the word, a trustee, but is to be constituted a trustee by a decree of a Court of equity, founded on the fraud, and the possession, in the mean time, is adverse to the title of the person who impeaches the transaction on the ground of fraud." A Court of equity does not impeach a transaction on the ground of fraud, where the fact of fraud was within the knowledge of the party, " within the period prescribed by the statute. But every new right of action in equity, that accrues to the party, on the discovery of the fraud, must be acted upon within that period." (p. 636.) If, then, the discovery of the fraud does not give a new right of action, it does not come within the principle of a Court of equity ; and if it does give a new right of action, then the replication is a departure from the declaration.

In *Cooth* v. *Jackson*, (6 *Vesey*, 39.) Lord *Eldon*, referring to the administration of justice in distinct Courts of law and equity, in *England*, observed, that the character of the law of that country had suffered more by the circumstance of Courts of law acting upon what they conceive to be the rules of equity, than from any other cause. A Court of equity has its peculiar mode of proceeding, and its peculiar remedies. In equity, great weight is attributed to the oath of the defendant ; and if he denies the fraud, the testimony of a single witness is not sufficient to support a decree against it ; though it would be enough for the plaintiff in an action at law.

In *Evans* v. *Bicknell*, (6 *Vesey*, 174. 182, 183.) Lord *Eldon*, in taking notice of the position of some of the common-law Judges, in *Paisley* v. *Freeman*, and some other cases, that if there was relief in equity, there ought to be relief at law, observes, that it was a proposition excessively questionable, and he doubted whether it was not founded in pure ignorance of the constitution and doctrine of the Court of Chancery. The position of Mr. Justice *Buller*, in *Good-*

*title* v. *Morgan*, (1 *Term Rep.* 755.) that what has become a rule of property in a Court of equity, ought to be adopted in a Court of law, appeared to him to be a very hasty proposition.

As to the decisions by the Courts of *Massachusetts* and *Pennsylvania*, it is to be observed, that in those states there are no Courts of Chancery, distinct from their common-law Courts. In the case of *The Massachusetts Turnpike Company* v. *Field*, &c., there was, in fact, a fraudulent concealment on the part of the defendants, which was the sole cause of the *delay* in bringing the action. In the present case, there was no such concealment. There was no act whatever on the part of the defendants which prevented the plaintiff from discovering the cause of action. His only excuse for not discovering it sooner, is, that his land was in such a wild state, and so covered with timber and trees, that the fraud of the defendants could not be discovered. Could the plaintiff, after suffering his land to remain in that state for fifty years, bring his action for a fraud in the survey, and reply this matter as an excuse for the delay? Chief Justice *Parsons*, in delivering his opinion, in the case cited, relied on the *dictum* of Lord *Mansfield*, in *Bree* v. *Holbeck*, and the case of *The South Sea Company* v. *Wymondsell*, (3 *P. Wms.* 143.) which was a bill for relief on the ground of fraud in a certain contract for stock; and Lord Chancellor *King* referred to Lord *Warrington's* case, (1 *Bro. P. C.* 455.) in which it was held, that if the fraud was known above six years before the filing of the bill, it would be barred by the statute; and that it was necessary to charge that the fraud was discovered within six years. The grounds of that decision, as stated by Lord *Redesdale*, (2 *Sch. & Lef.* 634.) were, that "the discovery of the fraud being alleged to be at a subsequent period, and arising out of circumstances collateral, a Court of equity was warranted in avoiding the transaction, notwithstanding the statute; for, pending the concealment of the fraud, the statute of limitations ought not in conscience to run; the conscience of the party being so affected that he ought not to be allowed to avail himself of the length of time." This doctrine of a Court of equity is not applicable in Courts of law,

NEW-YORK, which must be bound by the positive provisions of the sta-
May, 1822. tute. It is not surprising, that the judges in *Massachusetts*
TROUP and *Pennsylvania*, not adverting to this distinction between
v. the constitution and doctrines of the two Courts, should talk
SMITH. so loosely on the subject. This Court is now called upon to
lay down a rule of law, which was not present to the minds
of those who framed the statute ; and if it is to prevail,
why may it not be applicable to the case of a dormant part-
ner, concealed by the active partner ; or to criminal cases,
where the crime is concealed by the party for more than
three years ? If the rule applies to one section of the sta-
tute, it must be equally applicable to the others. In *Fowler*
v. *Hunt*, the Court merely decide what shall be a *return*
into the state, within the meaning of the *proviso* to the fifth
section of the statute ; that it must be open and public, not
clandestine.

Even, if the position of Lord *Mansfield* was sound, it
does not apply to this case ; for the plaintiff has abandoned
his count for money had and received, which is alone analo-
gous to a bill in equity, and proceeds solely on the ground
of fraud. He does not allege that the defendants have not
done the work; but merely that it has not been done well, or
as it ought to have been done, according to the contract. The
deception alleged in the replication is, the delivery of cer-
tain false and incorrect field-books, and maps of the survey ;
but this was before the plaintiff paid his money. If a false
assertion or representation is a sufficient answer to a plea of
the statute of limitations, it will be, in effect, repealed.

SPENCER, Ch. J. delivered the opinion of the Court. The
defendants have demurred generally to the plaintiff's repli-
cations to a plea of the statute of limitations. The decla-
ration is in *assumpsit*, on the promises of the testator, as a
surveyor, for a reward to be paid to him therefor, by the
plaintiff, to survey out into lots, skilfully and accurately,
a township of land, and to delineate the same on a map, to
enable the plaintiff, the proprietor thereof, to sell the same
in parcels, and to actual settlers. The breach alleged is, that
although the testator was paid therefor, a large sum of money,
he negligently and fraudulently performed his undertaking.

and did not faithfully and accurately execute the work; but, on the contrary, did it so unskilfully and negligently, that the same was of no value to the plaintiff.

The defendants pleaded the statute of limitations; that the action did not accrue to the plaintiff, within six years before the exhibition of the plaintiff's bill. To this plea the plaintiff replied, setting forth the particulars of the testator's fraud in making the survey, and the unskilful, insufficient, and unworkmanlike manner in which the work had been done; and that the land, at the time of the survey thereof, was in a state of nature, and was covered with timber, trees, and underbrush; and that by reason thereof, and of the false and incorrect field-notes, maps, and plats, the fraud and deceit practised by the testator were not discovered by the plaintiff, until a long time after the contract was performed, and after parts of the land had been contracted to be sold by the plaintiff to settlers; to wit, on the first day of *May*, 1818, at, &c. There are four several replications, substantially to the same effect; to these the defendants have put in a general demurrer.

Upon the argument, several exceptions were taken to the replications : 1st. That the action, as set forth in the replications, does not lie against executors. 2d. That the replications are a departure from the declaration. 3d. That they are double, inconsistent, and uncertain; and, 4. That the excuse set forth, in avoidance of the plea, is insufficient. As the opinion of the Court is founded on the last exception, it will not be necessary to examine, particularly, the other objections to the replication; but we have no difficulty in saying, that they are not well taken.

It is a general rule, that a replication must not depart from any material allegation in the declaration; yet, where there is an evasive plea, the plaintiff may avoid the effect of it by restating his cause of action with more particularity and certainty, and so as to meet and thwart the particular defence set up. (1 *Chitty's Pl.* 602, 603.) An action will not lie against the representatives of a party for a fraud, which does not benefit the assets; but it will lie upon a contract which has been fraudulently performed. As to the duplicity complained of, if any exists, the objection cannot be taken

NEW-YORK,
May, 1822.

TROUP
v.
SMITH.

on a general demurrer. The question, then, is, whether the frauds disclosed in the replications, in the survey made by the testator, and the non-discovery of those frauds, from the causes set forth, within six years from the performance of the survey, preclude the defendants from pleading the statute of limitations, in avoidance of the plaintiff's original cause of action ? And this leads to the inquiry, whether the plaintiff can, in a Court of law, set up a fraud on the part of the defendant, to take a case out of the operation of the statute of limitations ; and, if he can, whether sufficient matter has been alleged to deprive the defendants of the protection of the statute? The statute (1 *N. R. L.* 186.) enacts, that all actions upon the case, and of account, other than actions for slander, and actions which concern the trade of merchandise between merchant and merchant, their factors and servants ; and all actions of debt for arrearages of rent, or founded on any contract without specialty, and all actions of trespass, detinue, and replevin, for goods or chattels, and actions of trespass *quare clausum fregit*, shall be commenced and sued within six years next after the cause of such actions accrued, and not after. There are then savings, in case of the arrest or reversal of judgments, in favour of infants, feme coverts, insane or imprisoned persons, and where a person against whom a cause of action shall accrue, and who shall be out of the state at the time the same accrues ; giving the person entitled to the action a right to bring the same within the times limited, after the return of the person so absent into this state.

It was urged, on the argument, that the plaintiff's cause of action might be considered as accruing, when he discovered the fraud in making the survey by the testator ; or that the Court might say, that this case, and others similarly circumstanced, were not within the spirit and intent of the statute. It will readily occur to the profession, that Courts of law have, in many instances, introduced great refinements in the construction of statutes ; and that, in some instances, judges of great celebrity have deplored the first aberration from the plain and natural meaning of the words of statutes. With respect to the statute now under consideration, there has been great latitude of construction, going

almost to its abrogation. I mean, as to what amounted to an acknowledgment of a debt, so as to take it out of the operation of the statute; and, of late, Courts of law are travelling back to the support of the plain and obvious meaning of the enactment. After premising thus much, the inquiry is, when did the plaintiff's cause of action accrue? Most certainly, when the fraud was consummated; and that was when the testator had completed the survey, as far as it was completed, and made returns of his field-notes, maps, and plats, and received his compensation. The injury, as far as he was concerned, was then done; and he became, immediately, liable to an action, for the fraudulent and imperfect manner of executing the duties he had assumed. The fact, that the plaintiff did not discover the imposition practised upon him, is entirely distinct from the existence of such fraud and imposition. If, then, the plaintiff's cause of action accrued upon the consummation of the fraud by the testator, and not at the time the plaintiff discovered it, the statute interposes as a protection, unless the action has been commenced and sued within six years next after the cause of action accrued. But it is asserted, that fraud committed under such circumstances as to conceal the knowledge of a fact, and thus preventing a plaintiff from asserting his rights within the limited period, may be replied, and is an answer to a plea of the statute of limitations, if the action or suit be brought within six years after the discovery of the fraud. The only case in support of this position, in a Court of common law, in the *English* Courts, is that of *Bree* v. *Holbeck*, (*Doug*. 654.) In that case, the replication, after setting forth the means by which the plaintiff had been defrauded, went on to state, that the plaintiff, at the time of the execution of the assignment, and of paying the money, was ignorant of the falsehood of the assertions, and of the fraud so practised upon him; and did not discover them till within the space of six years next before suing out the writ. To this replication there was a demurrer. Lord *Mansfield* was of opinion, that the replication had charged no fraud on the defendant. He said, " there may be cases, too, which fraud will take out of the statute of limitations." The plaintiff's attorney had leave to amend, in case, upon inquiry, the facts would support a

NEW-YORK, charge of fraud; and there is no further trace of the case.
May, 1822. In the case of *The First Massachusetts Turnpike Company*
TROUP v. *Field and others*, (3 *Mass. Rep.* 201.) the question arose
v. on a replication, which showed the impracticability, if not
SMITH. impossibility, of discovering the fraud. The replication
stated, that the defendants fraudulently and deceitfully con-
cealed the bad foundation, the unsuitable materials, and the
work unfaithfully executed, by covering the same with earth,
and smoothing the surface, so that it appeared to the plain-
tiffs that the contract had been faithfully executed. *Par-
sons*, Ch. J. held, that the replication must disclose a fraudu-
lent transaction in the defendants, by which the time when
the cause of action accrued must have been fraudulently
concealed from the knowledge of the plaintiff, until a period
within six years before the action was commenced; and that
where the delay of bringing the suit is owing to the fraud
of the defendant, the cause of action against him ought not
to be considered as having accrued, until the plaintiff could
obtain the knowledge that he had a cause of action; and
that if this knowledge is fraudulently concealed from him by
the defendant, the Court would violate a sacred rule of law,
if they permitted the defendant to avail himself of his own
fraud. The only cases referred to by Chief Justice *Parsons*,
are, *Bree* v. *Holbeck*, and *The South Sea Company* v. *Wy-
mondsell*, (3 *P. Wms.* 143.) which refers to the case of Lord
*Warrington*, where he had a decree, notwithstanding the
statute of limitations was pleaded; the bill having been
amended by charging the discovery of the fraud to be with-
in six years before exhibiting his bill. The same principle
has been adopted in the Courts of some of the other states.

We cannot, however, yield the convictions of our own
minds to decisions evidently borrowed from the Courts of
equity, and which never have been sanctioned in the Courts
of law in that country from which our jurisprudence is de-
rived. It has been already observed, that the *dictum* of
Lord *Mansfield*, in *Bree* v. *Holbeck*, is the only instance in
which such a position was ever advanced in *Westminster-
Hall*; and when it is further considered, that his Lordship had
an inclination to intrench on Courts of equity, that mere
*dictum* cannot be regarded as authority.

NEW-YORK,
May, 1822.

TROUP
v.
SMITH.

'There is a marked and manifest distinction between a plea of the statute of limitations in a Court of law, and in a Court of equity.  The best and fullest view of the effect of such a plea, in a Court of equity, is given by Lord *Redesdale*, in 2 *Sch & Lef.* p. 634.  He says, that although the statute does not, in terms, apply to suits in equity, it has been adopted there, as a rule prescribed by the legislature; and the reason he gives, why, if the fraud has been concealed by the one party, until it has been discovered by the other, within six years before the commencement of his suit, it shall not operate as a bar, is this : *that the statute ought not in conscience to run ; the conscience of the party being so affected, that he ought not to be allowed to avail himself of the length of time.*  This is very intelligible and sound doctrine, in a Court of equity ; and is, I apprehend, the true and only tenable ground to deprive a defendant of the benefit of the plea. Courts of equity, not being bound by the statute, any further than they have seen fit to adopt its provisions as a reasonable rule, and then only in analogy to the general doctrines of that Court, are perfectly right in saying, that a party cannot, in good conscience, avail himself of the statute, when, by his own fraud, he has prevented the other party from coming to a knowledge of his rights, until within six years prior to the commencement of the suit.  But Courts of law are expressly bound by the statute ; it relates to specified actions; and it declares that such actions shall be commenced and sued within six years next after the cause of such actions accrued, and not after :  thus, not only affirmatively declaring within what time these actions are to be brought, but inhibiting their being brought after that period.  I know of no dispensing power which Courts of law possess, arising from any cause whatever ; and it seems to me, that where the legislature, in the same statute, gives an extension of time, in cases of the arrest or reversal of judgment, in cases of infancy, coverture of the feme, insanity, and imprisonment, and for an absence of the defendant out of the state, when the cause of action accrued, that it would be an assumption of legislative authority to introduce any other proviso.  The plaintiff's case may be a very hard

NEW-YORK,
May, 1822.

TROUP
v.
SMITH.

one; but that affords no reason for construing away a sta-
tute of great public benefit, and which, in many cases, is a
shield against antiquated and stale demands.    The plain-
tiff's counsel sought to derive aid to their argument from the
case of *Fowler* v. *Hunt*, (10 *Johns. Rep.* 464.) in which
the question was on the last proviso of the statute, and whe-
ther the defendant had, at a certain period, returned into
this state.    We held, that the *return into this state* must not
be clandestine, with an intent to defraud the creditor, by
setting the statute in operation, and then departing ; that it
must be so public, and under such circumstances, as to give
the creditor an opportunity, by the use of ordinary dili-
gence, and due means, of arresting the debtor.    The argu-
ment of counsel was, that if the Court could, in the one
case, examine into the spirit and intent of the statute, they
were at liberty to do so in the other case.    Having once
ascertained when the plaintiff's cause of action accrued,
there was nothing left for construction ; for then the statute
interposes, and requires the suit to be brought within the
period limited, except under the modifications contained in
the proviso.

But were we to proceed on the suggestion of Lord *Mans-
field*, the plaintiff would then have failed to make out a case
entitling him to an exemption from suing, because, he
did not discover the fraud of the testator until the first day
of *May*, 1818. The concealment of the fraud is not imputed
to the testator.    What he did was visible, and what he neglect-
ed to do would, or might have been discovered by repairing
to the land.    There was no concealment of the work actually
done, as in the case in 3 *Mass. Rep.* 201. ; and it was neither
impossible nor impracticable to find out the fraud.    That the
lands were in a state of nature, and thickly covered with forest
trees and underwood, certainly would not have prevented the
detection, had means been adopted for that purpose.    But we
wish to be understood, as deciding the case on the ground,
that whether there was a fraudulent concealment or not, so
as to prevent the plaintiff's discovering the fraud, until with-
in six years before the commencement of this suit, sitting as
a Court of law, and bound by the express provisions of the

statute, we could not notice the fraud so as to take the case out of the operation of the statute.

NEW-YORK,
May, 1822.

JACKSON
v.
STERNBERG.

Judgment for the defendants, with leave to the plaintiff to amend.