## SNODGRASS *vs.* BRANCH BANK AT DECATUR.

1. The possession of slaves by a fraudulent vendee gives him no title under the statute of limitations, as against a creditor of the vendor, if the latter could not, by reasonable diligence, have discovered the fraud within six years before the levy of his execution.

2. A witness may testify to the existence of notes or bills of exchange, although they are not produced, nor their absence accounted for.

3. So, also, he may testify to the fact that a debtor made a written proposition of compromise, without producing the writing, or accounting for its absence.

4. On a trial of the right of property in slaves, the claimant derived title under a bill of sale from the defendant in execution, which the plaintiff attacked for fraud ; and it was shown that the slaves had remained in the claimant's possession for about four years from the date of the bill of sale : *Held*, that the plaintiff might prove that the defendant in execution was decreed a bankrupt at the expiration of that time, and that the slaves were found in his possession a few months afterwards.

5. The record of a judgment rendered against the defendant in execution after his sale to the claimant, is not admissible evidence, as against the claimant, to prove an indebtedness prior to its rendition.

ERROR to the Circuit Court of Jackson.

Tried before the Hon. GEO. D. SHORTRIDGE.

TRIAL OF THE RIGHT OF PROPERTY in certain slaves, which had been levied on under execution in favor of the Branch Bank at Decatur against Benjamin Snodgrass, and claimed by William Snodgrass, the plaintiff in error, who derived title under an absolute bill of sale from said Benjamin. The plaintiff's judgment, on which the execution issued, was rendered in 1839 ; and the claimant's bill of sale, which purported to be for valuable consideration, was dated May 31, 1838. The execution was levied on the slaves in controversy on the 9th of October, 1846.

To prove an indebtedness from said Benjamin Snodgrass to said Branch Bank, and that said indebtedness existed prior to said 31st day of May, 1838, the time when said sale was made by said Benjamin to the claimant, the plaintiff offered to read the recitals in a transcript of the record of two judgments, rendered against said Benjamin, in favor of said Branch Bank, in 1839 ; to which, as evidence of an indebtedness prior to the date of the judgments, the claimant objected ; but the court overruled his objection, and allowed the recitals in said transcript to be read to the jury, as evidence of the time when the debts on which the judgments were rendered were contracted ; and to this ruling of the court the claimant excepted.

The plaintiff introduced a witness, who testified, that he was a director in said Branch Bank at Decatur in 1837 and 1838, and was well acquainted with the handwriting of said Benjamin Snodgrass ; that he saw in said Bank, in those years, several notes and bills of exchange having the signature of said Benjamin Snodgrass, or signed by his then partner in business, with whose handwriting witness was also acquainted, in the firm name of Harris & Snodgrass. Upon cross-examination, said witness, who was introduced by plaintiff to prove an indebtedness on the part of said Benjamin Snodgrass to said Branch Bank prior to the date of said bill of sale, testified, that he knew of said indebtedness only from having seen said notes and bills of exchange, as above stated, and from entries in the books of said Bank. Neither said

notes or bills of exchange, nor said books containing said entries, nor sworn copies thereof, were produced, nor was their absence accounted for. The claimant objected to the admission of so much of the testimony of said witness as related to said indebtedness ; but the court overruled his objection, and permitted the evidence to go to the jury ; and the claimant excepted.

In order to show a motive for the execution of said bill of sale, plaintiff asked a witness, if said Benjamin Snodgrass had not, prior to said 31st day of May, 1838, made a proposition to compromise his indebtedness to said Branch Bank, and if said proposition had not been rejected prior to said 31st of May, 1838. The claimant objected to this question, but his objection was overruled. The witness answered, that said Benjamin did make such a proposition in writing, and that it was rejected, prior to said 31st May, 1838. Said written proposition of compromise was not produced, nor was its absence accounted for. The claimant objected to the admission of this evidence ; but his objection was overruled, and he excepted.

The plaintiff also offered to read to the jury a transcript of a decree in bankruptcy, rendered by the U. S. District Court at Huntsville on the 29th day of November, 1843, discharging said Benjamin Snodgrass as a bankrupt. This transcript was offered as evidence to show the fact and date of such discharge, and that only about two months elapsed after the date of said discharge before said slaves returned to the possession of said Benjamin. The claimant objected to the admission of said transcript ; but his objection was overruled, and he accepted.

There was evidence tending to show, that the claimant purchased said slaves from said Benjamin Snodgrass on the 31st of May, 1838 ; that they were then in the possession of one Thomas Snodgrass under a contract of hiring, and so remained in his posession until the 1st of January, 1839, when they passed into the possession of the claimant, and continued in his possession until the 22nd day of January, 1844 ; that they then passed into the possession of said Benjamin, under a contract of hiring between him and said claimant, and continued in his possession until October, 1846, when plaintiff's

execution was levied on them. There was evidence, also, tending to show that claimant, from the time of his purchase, in 1838, until the levy of plaintiff's execution, claimed said slaves to be his own property.

Upon this evidence, the claimant asked the court to instruct the jury, that if they believed from the evidence that claimant purchased said slaves from said Benjamin Snodgrass on the 31st of May, 1838, and claimed them as his own from that time until the levy of plaintiff's execution, and that said slaves were in his peaceable possession from the 1st of January, 1839, until the 22nd of January, 1844, and then passed from him, under a contract of hiring, into the possession of said Benjamin Snodgrass, and remained in his possession, under said contract, until the levy of plaintiff's execution, in October, 1846, and that plaintiff's judgment was rendered on the 22nd of February, 1839 ; then they must find for the claimant, although they might believe that claimant's said purchase was made to hinder and delay the creditors of said Benjamin Snodgrass. The court refused to give this charge, and the claimant excepted.

These several rulings of the court are now assigned for error.

SAML. F. RICE, with whom were BRICKELL & CABANISS, for the plaintiff in error :

1. A record is evidence of the facts recited in it, only as between parties and privies.—3 Porter 403 ; 7 *ib.* 466 ; 9 *ib.* 412 ; 9 Ala. 973 ; 17 *ib.* 681.

2. When the contents of a writing are inquired after, it must be produced, or its absence must be accounted for.— Smith v. Armstead, 7 Ala. 702. When a witness states that written evidence of a fact exists, parol evidence is inadmissible.—12 Ala. 263. A witness cannot testify as to facts of which he knows nothing further than that he found them recorded in the books of a Bank.—8 Ala. 79. An admission, made during a proposition of compromise, is not admissible evidence against the maker of it.—14 Ala. 465 ; 8 *ib.* 432. The proposition of compromise made by the defendant in execution, was an act or declaration with which the claimant had no connection, and was therefore inadmissible against him.—10 Ala. 355.

3. The decree in bankruptcy was inadmissible, because (1st) it was rendered long after the sale to the claimant ; and because (2nd) it did not tend to raise any presumption against the fairness of that sale.—7 Ala. 382; 10 *ib.* 379; 16 *ib.* 364; 18 *ib.* 585 ; 17 *ib.* 503.

4. The charge requested, as to the effect of the statute of limitations, should have been given : it asserted a correct proposition of law.  It has long been settled, in this State, that the statute of limitations embraced every claim to property, however imposing, with the single exception of claims founded on a *direct trust of exclusive equitable cognizance.*—Mason v. Maury, 8 Porter 211 ; Humphries v. Terrell, 1 Ala. 650 ; Johnson v. Johnson, 5 *ib.* 90; Tarleton v. Goldthwaite, 23 *ib.*  If creditors have any claim to slaves, the possession of which has been parted with by their debtor, under an absolute bill of sale executed with intent to defraud them, that claim may be asserted *at law*, as soon as they obtain judgment and can issue execution thereon, by causing their execution to be levied on the slaves in the possession of the fraudulent vendee.  Such a claim, then, is not exclusively cognizable in equity ; nor is it founded on a direct trust, but, at most, is based on the idea of an implied trust, and is not exempt from the influence of the statute of limitations.  That statute expressly provides, that certain *persons* shall be saved from its influence—i. e. minors, *femes covert*, &c.; but there is no saving as to a *creditor*.  It expressly provides, also, that certain *subjects* shall be excepted from its influence—i. e. accounts between merchant and merchant, &c.; but there is no exception as to *frauds*, nor as to possession parted with under fraudulent bills of sale.

If, then, such a, possession never can be protected by the statute of limitations, why is it so ?  The only reasons assigned are, the provisions of the second section of the statute of frauds ; for, if there was no statute of frauds, it is certain that such a possession might create a title in the possessor under the statute of limitations.  To give this effect to the statute of frauds, the courts must sanction one or more of the following propositions : 1st, that the statute of frauds, *per se*, creates a new exception not contained in the statute of limitations ; 2nd, that in the enactment of the two statutes, or of

one of them, the Legislature intended, by a studied silence as to them, to exclude such possessions from the operation of the statute of limitations ; 3rd, that the statute of frauds, when-ever it speaks, is a statute of frauds, operating as such upon every subject mentioned in it, and whenever it ceases to speak, it becomes also a supplemental statute of limitations, engrafting on the original, by the magic of its silence, a saving of creditors and an exception of all such possessions ; 4th, that in the construction of these statutes, the maxim " *expressio unius exclusio alterius*," and the rule which requires such a construction to be placed on each, if possible, as will allow some effect to every word and clause of each, must both be abandoned. Each of these propositions is indefensible.— Each one of these statutes is as much a part of the law, as the other ; each has a distinct object, and a distinct sphere of operation ; each can operate in full, without the slightest interference with the complete operation of the other ; they are harmonious parts of one system.

The statute of frauds operates upon " every gift, grant, or conveyance" of real or personal property, and upon " every bond, suit, judgment, or execution," had, made, or contrived of fraud, collusion, or guile, with intent to delay, hinder, or defraud creditors ; it also operates (not upon all possessions, but) upon certain possessions therein specified, viz., possessions held for three years under a loan, reservation, or limitation of use or property. The plain object of the statute was, to put out of the way of creditors every such gift, grant, conveyance, bond, suit, judgment, or execution,. and to declare the effect of such possessions of three years, and to leave every other kind of possession to the operation of such other law, including the statute of limitations, as might be applicable to them. The statute is not silent on the subject of possessions ; it mentions and makes provision as to certain kinds of possession, which would not confer title under the statute of limitations. But it is entirely silent as to possessions of six or sixteen years, and as to the effect of possession in creating title under the statute of limitations. There must be some significance in this discriminating silence.— When the subject of possessions was in the mind of the Legislature, as shown by the provisions of the statute of frauds,

why were its provisions confined to "possessions of three years under loans," &c., and to the declaration that "every conveyance," &c., to defraud creditors, should be void as to them? Why was no provision superadded, that possession, held or acquired under such fraudulent conveyance, should be inoperative to create title under the statute of limitations? The simple answer is, that the statute of frauds was not intended to enlarge or diminish the sphere of the statute of limitations, nor the subjects or persons embraced by it at that time.

The statute of limitations operates upon wrongful possessions—unlawful possessions—possessions which the courts of the country would not protect, but would change upon the application of the person having the superior right within the time prescribed by it. Its object is, to quiet all such wrongful possessions, when they have continued for the prescribed time, to divest all outstanding title, and vest it in the possessor. If the possession is rightful when commenced, the statute does not operate upon it so long as it continues rightful. But if it afterwards becomes wrongful, no matter how, and continues wrongful for the prescribed length of time, the statute creates a title in the possessor. Whether acquired by a trespass, or by a fraudulent conveyance, or any void grant, such possession, if wrongful, is alike within the operation of the statute; for that statute begins to operate as soon as the possession is wrongful, unless the case falls within one of its express exceptions.—Comins v. Comins, 21 Conn. 413, which is opposed to the case cited by the defendant from 4 Day's R. 284 ; Sumner v. Stephens, 6 Metcalf's R. 337; Parker v. Gregory, 29 E. C. L. R. 14 ; Barker v. Salmon, 2 Metcalf's R. 32.— An entry and possession, under a claim of title, by virtue of a void grant, is not less adverse, than if the possession were taken and held without any color of title whatever.—Angell on Limitations, p. 410 ; 8 Cowen 609 ; 16 Ala. 595 ; 2 Smith's L. Cas. 492 ; 21 Conn. 413 ; 6 Metc. 337. The simple inquiry is, whether the possession of slaves, acquired under a fraudulent conveyance, is rightful or wrongful as against a judgment creditor of the grantor. If such possession is rightful, the law will not allow the creditor to disturb it ; but if wrongful, he may disturb it by levy at any time

within six years after it commenced. The conveyance, if fraudulent, is void as to creditors, and must be put out of their way ; and when the conveyance is thus put aside, the possession was wrongful from its commencement.

The statute does run in cases of fraud, and forms a positive bar which a court of law cannot disregard.—3 Murph. (N. C.) 115 ; ib. 544 ; 3 Ired. 481. To hold that it will not run, would repeal the statute.—9 Verm. 110 ; 10 Ohio 469 ; 2 Munf. 511 ; 11 Humph. 313. Plaintiff's ignorance of his rights is no answer to a plea of the statute.—20 Johns. 33 ; 5 Wend. 30 ; 17 ib. 202. No fraud, or knowledge on part of the defendant that his claim is fraudulent, will excuse the plaintiff from bringing his action in time.—24 Wend. 587 ; 1 Humph. 335; 4 ib. 312; 7 Yerger 222; 2 Hill (S. C.) 299. The true meaning of the statute, as to personalty, is, that the party shall have six years within which it shall be open to him to proceed to assert his title.—1 Sch. & Lef. 413 ; 3 Johns. 524 ; 13 Missouri R. 159.

JOHN A. ELMORE and C. C. CLAY, Jr., contra :

1. The transcripts were admissible as evidence of the indebtedness of defendant in execution prior to the sale of the negroes : 1st, as an admission by the defendant in execution "at a period of time when it was not his interest to make it."—Goodgame v. Cole, 12 Ala. 77; 2nd, as tending, in connection with the testimony of the bank director, to prove the prior indebtedness of the defendant in execution, from the presumption that the judgments were on the instruments seen by the director. Although there may have been error in admitting it, without the announcement of the expected connection, yet, when this subsequent evidence was introduced, naturally connecting itself with the previous evidence, the error was cured, as it is error without injury. On the admission of this evidence, see authorities post on 2nd point.

2. There is no error shown by the record in the admission of these transcripts. Their contents are not set out, and error will not be presumed, but must be shown affirmitively. Long v. Rogers, 19 Ala. 322 ; Lawson v. Orear, 7 ib. 784 ; 1 ib. 517 ; Stone v. Stone, ib. 582; Duffee v. Pennington, ib. 506 ; Dozier v. Joyce, 8 Port. 303 ; 15 Ala. 18.

3. The notes and bills, testified to by the director, need not have been produced, or their absence accounted for, by positive evidence; because, 1st, the evidence was not as to their contents, but the fact of their existence (P. & M. Bank v. Borland, 5 Ala. 531 (543-4); P. & M. Bank v. Willis & Co., 5 *ib.* 770, (783-4); Andrews, &c., v. Jones, 10 *ib.* 460 (472); Graham v. Lockhart, 8 *ib.* 9 (25); Smith v. Armstead, 7 *ib.* 698 (702); Sally's Adm'rs v. Capps, 1 *ib.* 121); 2nd, they were collateral instruments, and their contents may be proved without accounting for them (see cases *supra*); 3rd, their absence was sufficiently accounted for. Ten years had elapsed—presumption of loss, or that they had been mislaid, or out of the power of the Bank to produce, would arise from this lapse of time. It is a question addressed to the discretion of the court, whether they are withheld from a sinister purpose. Sally's Adm'rs v. Capps, 1 Ala. 121; Mordecai v. Beal, 8 Porter 529; Jones v. Scott, 2 Ala. 58. The witness knew the handwriting, and his evidence on this fact was as good as if the notes and bills had been before him while testifying.— His evidence as to the entries in the books of the Bank, was brought out in cross examination by the claimant, and was his testimony. If one part of this witness' evidence was good, it is not impaired by a part which is illegal, unless the objection was confined to that portion which was illegal; but the objection was to the whole of the testimony.—Hrabrouski v. Herbert, 4 Ala. 265; Hatchett v. Gibson, 13 *ib.* 587; Melton v. Troutman, 15 *ib.* 535.

4. The proposition to compromise was admissible: 1st, as evidence of indebtedness at the time to the Bank; 2d, as evidence of his embarrassments previous to, and in connection with, the sale to his brother; and, in connection with the refusal of the Bank, evidence of a motive on his part to put his property out of the way. This was not a proposition to settle a controversy by compromise, but to discharge an admitted debt by the payment of less than the whole, or in some other manner. The objection, however, as to its being a proposition of compromise, cannot be made by a third party; it is a personal privilege of the party making the offer.

5. The objection to the evidence of the proposition for a compromise, was not that the writing was not produced, or

12

accounted for ; and if the writing itself would have been evidence if produced and proved, this exception must fail. The presumption was, however, that the writing was lost, mislaid, or returned to the defendant in execution. It was also a collateral paper.—See authorities on third point, *supra*.

6. The evidence of the bankruptcy, in connection with the immediately subsequent possession of the negroes by the defendant in execution, was competent. There was no presumption that they had been acquired after the bankrupt's discharge by his industry or business. His previous possession and subsequent were facts, in connection with others, for the jury, to determine whether it was honest and fair, or otherwise.—Hargrove v. Cloud, 8 Ala. 173 ; Petty v. Walker, 10 *ib.* 379 ; Powell v. Knox, 16 *ib.* 364.

7. When the claimant derives title from the defendant in execution, if that title is fraudulent, he cannot interpose the statute of limitations against the creditors of the defendant. Powell v. Wragg & Stewart, 13 Ala. 161 ; Beach v. Catlin, 4 Day 284 ; Ballantine on Limitations, 374. In such a case the claim is not *bona fide*, which is necessary to make the possession adverse.—Herbert v. Hanrick, 16 Ala. 595 ; Brown v. Lipscomb, 9 Porter 472 ; Abercrombie v. Baldwin, 15 Ala. 363 ; Kelty v. Fitzhugh, 4 Rand. 600 ; Hinton v. Nelms, 13 Ala. 222. Nor can it be confirmed by matter subsequent.—Roberts on Frauds, 495-6, 521-2, 595 ; Duncan v. McCulloch, 4 S. & R. 483 ; Kimball v. Hutchinson, 3 Conn. 450. And his possession is that of the defendant in execution.—McCaskle v. Amarine, 12 Ala. 24 ; McConnell v. Brown, 5 Monroe 484.

8. In trials of this character, where claimant derives title under the defendant, the only question is, the *bona fides* of the transaction.—Yarborough v. Moss, 9 Ala. 382.

9. The charge requested was . properly refused : because, 1st, the question of adverse possession is one of fact for the jury, and this by the charge was taken from them (McMasters v. Bell, 2 Penn. 180 ; Herbert v. Hanrick, 16 Ala. 594 ; Grafton v. Grafton, 8 S. & M. 77) ; 2nd, to constitute adverse possession, the assertion of the claimant's right must be open and notorious, or known to the plaintiff, and this fact was omitted in the charge requested (Hinton v. Nelms, 13 Ala.

222 ; Abercrombie v. Baldwin, 15 *ib.* 363 ; Herbert v. Hanrick, 16 *ib.* 581); 3rd, if the charge had been given, the jury under it might have found for the claimant, although his possession was not *bona fide*, or his claim openly asserted or known to the plaintiff. The claimant cannot deny the title under which he acquired possession, and the title is cumbered with the fraud.

The answer to the argument of Mr. Rice is, that the possession is acquired under a secret trust in favor of the grantor, and the grantee is but the bailee of the grantor ; and the law presumes the continued possession to be under the same trust or bailment, unless the contrary be shown. Also, the titles being void against the creditors of the defendant in execution, and the effect the same as if there was no deed—the possession without title or deed is referred still to the title of the defendant in execution, on the ground of the secret trust in his favor.

GOLDTHWAITE, J.—The main question in this case is as to the effect of the statute of limitations upon the possession of a vendee acquired and held under a conveyance to defraud creditors. In courts of equity, it is received as the settled doctrine, that fraud, if operating to conceal the facts upon which the rights of a party to maintain his suit depend, does affect the bar which would otherwise be created by the statute of limitations ; and in all cases where that court acts in obedience or analogy to the statute, if the complainant uses reasonable diligence to discover the fraud, and files his bill within the time prescribed by the statute after such discovery, it is sufficient.—Booth v. Lord Warrengton, 4 Bro. Parl. Cas. 163; Western v. Cartright, Scl. Cas. in Chan. 34; South Sea Co. v. Wymondsell, 3 Pr. Wms. 143; Hovenden v. Lord Annesley, 5 Sch. & Lef. 634 ; Michaud v. Girard, 4 How. 503 ; Troup v. Smith, 20 John. 33; Farnam v. Brooks, 9 Pick. 212 ; Sherwood v. Sutton, 5 Mason 143 ; Frankfort Bank v. Markley, 1 Dan. 373. But whether fraud, thus operating, will have the same effect at law, is a question upon which there is some conflict of authority. In Bree v. Holbreck, Doug. 630, on a demurrer to a replication, the object of which was to take the case out of the statute upon an alle-

gation of fraud, Lord Mansfield said, "There may be cases which fraud will take out of the statue of limitations"; and the plaintiff was permitted to amend his replication, so as to charge fraud in the defendant; the facts alleged, in the opinion of the court, not amounting to fraud. In Clarke v. Hougham, 3 D. & Ry. 320, it seems to have been conceded, that had there been a special charge of fraud, it would have furnished an answer to a plea of the statute. See, also, the opinion of Abbot, J., in Granger v. George, 5 B. & C. 149; Brown v. Howard, 4 Moore 503; Bolton *Ex parte*, 1 M. & A. 60. These cases are conclusive, we think, to show that in England, when the facts are concealed by fraud, the statute only runs, in courts of law, from the discovery of the fraud. In the United States. the question has frequently been considered; and in Beach v. Catlin, 4 Day 284, upon the identical question which is presented in the present case, it was held, that no length of possession under a fraudulent deed would give the vendee title, as against the creditors of the vendor. In Powell v. Wragg & Stewart, Collier, C. J., holds the same opinion; but we do not regard that case as an authoritative exposition of the law, for the reason, that two judges only were sitting, and Dargan, J., rests his opinion on different grounds. In Massachusetts, Maine, Pennsylvania and Indiana, a doctrine in conformity with that of Lord Mansfield is asserted (Massachusetts Turnpike Co. v. Field, 3 Mass. 201; Horner v. Fish, 1 Pick.; Wells v. Fish, 3 Pick. 75; Jones v. Caraway, 4 Yeates 109; McDowell v. Young, 12 S. & R. 128; Rush v. Barr, 1 Watts 110; Perrock v. Freeman, *ib.* 491: Harrisburg Bank v. Foster, 8 Watts 12; Raymond v. Symonson, 4 Black. 85); and McLean so holds in Mitchell v. Thompson, 1 McLean Cir. Co. R. 96; and Judge Story, in Sherwood v. Sutton, *supra*, in a well considered opinion, in which he reviews the leading authorities on both sides, arrives at the same conclusion, resting his opinion mainly on the ground that fraud forms an implied exception to the statute. On the other hand, the courts of New York, Virginia, South Carolina. North Carolina and Tennessee, hold the opposite doctrine.—Troup v. Smith, 20 John. 33; Callis v. Waddy, 2 Munf. 511; Miles v. Barry, 1 Hill's S. C. 296; Hamilton v. Smith, 3 Mur. 115; York v. Bright,

4 Hump. 312. The weight of authority is, we think, clearly with the position, that there are cases in which fraud will, in courts of law, furnish an answer to the statute ; but we do not rest it upon authority alone : we are not willing to go to the length of the Connecticut decision, and hold that no length of possession, however long, under a fraudulent conveyance, will bar the creditors of the grantor. A possession under a fraudulent deed may be void, but it is no more so than one acquired by a trespass, or any other unlawful act ; and against possessions of the latter character, it is clear, the statute runs. We agree, that the statute is one of repose, and would apply it to every case of adverse possession, except where the defendant, *by fraud*, has prevented the plaintiff from obtaining a knowledge of the facts upon which his action depends : and in such a case, the party should, under the influence of the statute, be required to bring his suit within the period prescribed after the discovery; but the defendant should not be allowed to claim any benefit by a fraud upon the statute. The act, it is to be observed, was passed for the protection of the defendant. By his fraudulent conduct he prevents the plaintiff from complying with its terms—from bringing his suit within the time—and then seeks to take advantage of an omission which his own fraud has caused. A construction which would produce this result, is at variance with the established rules of law, which never allows an advantage to be gained in this way ; and, if countenanced by the courts, must necessarily enure to the encouragement of fraud. Such, we think, could not have been the intention of the Legislature, and such is not the rule which a just and enlightened equity, professing to follow the law, holds. Upon principle, as well as authority, our conclusion is, that if the creditor could not, with reasonable diligence, have discovered that the conveyance was fraudulent within six years before the levy of his execution, the possession of the fraudulent vendee for more than that time would give him no title against the creditor. The court, therefore, did not err in the refusal to give the first charge requested.

The proof by the witness who testified, that he was acquainted with the hand-writing of Benjamin Snodgrass, and that he had seen notes and bills of exchange, signed by him

and his partner, in the possession of the Bank, prior to the date of the sale, although the notes and bills were not produced, nor their absence accounted for, was competent. The fact of the existence of such notes and bills, he could as well prove, if he knew it, without their production, as if they were produced. There was no attempt to prove their contents. The case falls, on this point, within the decisions in 5 Ala. 543 ; 8 *ib.* 9 ; 21 *ib.*, Dixon v. Barclay. See the cases collated on this question in Cowen & Hill's Notes to Phil. on Ev. pp. 1207, *et seq.*

Proof that Benjamin Snodgrass, previously to the sale in May, 1838, had made a proposition in writing to the Decatur Bank to compromise his indebtedness, which had been rejected, without the production of the paper making the offer, was competent, as tending to show the existence of an indebtedness at that time by the party making the offer. The same rule will govern as in the point last considered. It was proving as a fact the existence of such a paper, not the particular contents. We do not understand, from the terms of the bill of exceptions, that this " proposition to compromise his indebtedness" was any offer to buy his peace against a disputed claim, and confidential in its character, but simply to settle the debt by paying less than the whole amount admitted to be due.

The court admitted testimony on the part of the plaintiff below, that the slaves in controversy had gone back into the possession of Benjamin Snodgrass a short time after his discharge as a bankrupt, and, to show the time of such discharge, allowed a transcript of the decree in bankruptcy to be given in evidence against the objection of the claimant.— As a general rule, great latitude is allowed in the range of the evidence, when the question of fraud is involved. It is indispensable to truth and justice that it should be so ; for it is hardly ever possible to prove fraud, except by a comprehensive and comparative view of the actions of the party to whom the fraud is imputed, and his relative position a reasonable time before, at, and a reasonable time after, the time at which the act of fraud is alleged to have been committed. No more precise general rule can be laid down in such cases. Here, the alleged act of fraud is the sale in May, 1838. After

that the slaves go into the possession of the vendee, and remain four years. The vendor, in the course of two years or so, goes into bankruptcy, and obtains his discharge in November, 1843 ; and in a few months after this event, the slaves are found again in his possession. We do not hesitate to say, that it was competent to prove to the jury, in a case like this, as circumstances proper to be taken into the whole account, that the vendor was decreed a bankrupt in 1843, and that a short time after his discharge the slaves went back into his possession. The transcript of the decree was the proper form of evidence of the fact of his bankruptcy and discharge.

The recitals of the record in suits between the Decatur Branch Bank and Benjamin Snodgrass, in which judgments were rendered against him in 1839, were admitted by the court, against the specific objection of claimant, to prove that said Benjamin was indebted to the said Bank prior to the date of the judgments in said suits. This was error. A record of a judgment between other parties is always admissible to prove the mere fact of the existence of such judgment, when that fact is material to the issue. This comprehends only the judgment of the court, and such parts of the record as are necessary to show when and by what court it was rendered. All other parts—the declarations, pleas, orders of continuance, or the recitals which precede the judgment, when the court is of special and limited jurisdiction, or where a court of general jurisdiction renders judgment by default in a statutory proceeding—must be considered, as to all other persons than the parties to the judgment and their privies, " *res inter alios acta*," and therefore not admissible as evidence against them.

The defendant in error insists, that Benjamin Snodgrass may have demurred to the Bank notice or declaration, prior to the date of the bill of sale to claimant, or given a power of attorney to confess judgment before then, which was duly proven, and that either of these would be a judicial admission of indebtedness before the sale, provable by the record. As against Benjamin Snodgrass, doubtless, it would, in favor of any one ; but to say that it would be a judicial admission of Benjamin Snodgrass that will bind William L. Snodgrass, is to say that one man may make an admission which will

affect the interests of another, and fix the proof of it at the same moment, without that other ever having an opportunity to be heard, which is against all reason and principle.— Crutchfield v. Hudson, 23 Ala.; 1 Green. Ev. §§ 527 *et seq.*

For the error above noted, the judgment must be reversed, and the cause remanded.