DIDIER, survivor of D'Arcy, *v.* DAVISON, survivor of Hill.

A plea of the statute of limitations, setting up two matters, either of which establishes that defence, is not for that cause a double plea.

A debtor who had failed and whose debt was past due, assured his creditor in writing, that he would pay if he became able. The creditor did not agree to forbear the debt, but he omitted to sue, and the debtor afterwards became able to pay it. *Held*, that the creditor's action accrued on the debt falling due, and not on the debtor's becoming able to pay.

Equity, before the revised statutes, applied the doctrine of limitation of actions, by analogy to the construction and application of the statute in the courts of law in like cases.

Under the statute of limitations enacted in 1813, it was not necessary that the person relying upon a return to this state as commencing the period of limitation, should have resided here full six years after such return; nor that his residence here should have become known to the creditor.

It sufficed that the debtor's return was open and public, and made with the intent to reside in the state.

J. residing in the West Indies, in.and prior to 1816, became largely indebted to D, & D., merchants in Baltimore. He failed, and went to England, from whence in 1817, he wrote to the D.'s promising to pay when he became able. Subsequently he went to South America and resided there several years. In March, 1834, he came to New York to reside, having sent his family here in the summer of 1833. He declared his intention of becoming a citizen in April, 1834, and he and his family resided here, openly until September, 1835, with the exception of his own temporary absence from March, till July, 1835. In November, 1843, D. commenced a suit in equity in this state against J. to which J. pleaded the lapse of time, setting up as a bar his residence here in 1834 and 1835. *Held*, that the plea was a good bar to the suit.

Amending a plea, defective in form.

June 14, 15; August 8, 1844.

THE bill was filed by Henry Didier as surviving partner of the firm of Didier & D'Arcy of Baltimore in Maryland, against James Davison as survivor of the firm of Davison & Hill. It set forth a large indebtedness by the latter firm to D. & D. arising upon bills of exchange and a joint shipping adventure in 1815 and 1816. D. & H. transacted business in the island of Hayti, and also in Baltimore where Hill lived. Davison resided in Hayti. D. & H. failed in 1816, and then owed D. & D. over $30,000. The bill set forth sundry letters from Davison to D. & D. in 1816 and 1817, some written from Hayti and others

from London, acknowledging the debt and promising to pay it whenever he became able. That he has resided out of the United States ever since, and neither he nor Hill have been in the country, except a temporary visit which the defendant pretends Hill made in 1820, an l anc ther by Davison in 1834; as to which, the bill alleges that Hill was worth nothing in 1820, and D. & D. were ignorant of the visits of both Hill and Davison, and while here, they avoided D. & D. That Davison while in the United States in 1834, did not appear as a business man, nor purchase nor rent a house or store, nor did his name appear as residing here in any manner; and he did not leave or afford D. & D., any opportunity of enforcing their claim; and that he did not become able to pay the debt till after 1830.

Davison put in a plea in bar, accompanied by an answer. He set up in his plea that the complainant's cause of action or suit arose six years before filing their bill, and six years before serving or suing out process against him to appear and answer the same. The plea then traversed the allegations of the bill as to the defendant's continued residence out of this state, and averred his actual and open residence in New York with his family, from March 7, 1834, to March, 1835, when he left the state, returning in July, 1835, and then continued to reside here until September, 1835, and during his residence he continued to transact mercantile business here.

The plea also averred that Hill came to this state to reside in 1820, and continued actually and openly to reside here for three or four years next thereafter.

The answer in support of the plea averred the defendant's residence as before stated, and that on the 5th of April, 1834, he filed in the usual form, his intention of becoming a citizen of the United States. That his absence from March to July, 1835, was temporary; and that when the bill was filed, he was an actual resident of this state. That in the summer of 1833, he sent his family from New Grenada in South America, where he was then living, to New York, intending to change his residence and reside permanently in the United States. That his arrival here was published in the list of the passengers inserted in the newspapers. The answer then states his boarding with

his family in various public boarding houses in the city of New York, his keeping house openly in one place from the first of May till October, 1834, and in another, from that time till March, 1835. That he lived openly and without concealment, and received from his friends and acquaintances, visits in the most public manner. That in March, 1835, his business required him to go temporarily to South America, which he did, leaving his family in New York. He returned in July, and in August hired a house in Brooklyn for a year, and moved into it with his family. And when he left in September, 1835, his family remained, residing in that house. In July, 1834, he entered into a copartnership with a house here, in which he was described as residing in New York. The business was to be transacted mainly in South America, by one of the partners residing there, but the defendant's interposition in its management, appeared to have been intended to take place here. He transacted much business here, which was done at the office of his partners. His name did not appear on any sign, and he rented no store house.

The answer also set forth Hill's residence in the state of New York from 1820 to 1823 or 1824, and that he died at sea in 1824 or 1825.

The cause came before the court on the sufficiency of the plea.

*James Smith,* for the defendant in support of the plea.

*C. B. Moore,* for the complainant.

The Assistant Vice-Chancellor.—The complainant raises some questions upo˙ the form of the plea, which are first to be considered.

1. It is said to be double, because it sets up two matters, either of which, if they be a defence at all, constitutes a full defence to the suit, viz: the return of Hill to this state in 1820, and Davison's residence here in 1834.

The defence set up by the plea, is that the demand is barred by the statute of limitations. This is a single point, and both of these facts are brought forward to support it. I think the decision of Lord Thurlow in *Whitehead* v. *Brockhurst,* 1 Bro. C. C. 404, sustains the plea. He illustrates the point by suppo-

sing many deeds stated in a plea to establish the defence of title. And if the deeds came from adverse claimants of the title, the case supposed would be analogous to the two distinct facts stated here.

2. Another objection is that the plea and answer do not meet the charge in the bill that Hill & Davison avoided the complainant and his partner, and afforded them no opportunity to sue or enforce their demand; also they omit to answer as to what business Davison transacted here, and other material facts which show that the complainant had no means of knowing of his residence here.

Without going into a comparison of the bill and answer, I need only say that these allegations are sufficiently traversed to present fairly and distinctly the question on the statute of limitations. And indeed, if the plea were informal and insufficient on either of these grounds, it is a case in which the court would permit it to be amended, provided the defence attempted to be set up appears to be well founded. (Beames' Pleas in Eq. 320. 2 Daniells' Ch. Pr. 230.)

I will therefore proceed to the merits of the case.

*First.* I cannot assent to the complainant's position, that the action accrued, only on Davison's becoming able to pay the debt. It appears by his letters, that in substance he assured Didier & D'Arcy that he would pay them if he became able to discharge his engagements. But there was no corresponding promise to forbear, nor any consideration moving from Didier & D'Arcy. They could have sued him as well in 1817, as at this moment, so far as it depended on any compact between the parties.

The cause of action must therefore be deemed to have accrued in 1816 or 1817, and the provisions of the four first articles of the statute of limitations contained in the revised statutes are inapplicable to the principal questions discussed. (2 R. S. 300, § 45; *Van Hook* v. *Whitlock*, 3 Paige's R. 409.)

*Second.* There can be no doubt but that this is a case in which the statute of limitations would be a bar, if the parties had all been residents of this state. Although the defendant sets up no actual payment, he states facts from which the law presumes payment to have been made. The demand is at first blush, a very stale claim, one at which a court of equity will be quite as

likely to look askance as it would at the naked defence of the statute without the pretence of actual payment.

Further, the claim is chiefly upon bills of exchange; and for other branches of it, an action of assumpsit could have been brought. The whole of it was cognizable at law in assumpsit and account. The joint adventure stated in the bill, wears no aspect of a trust of mere equitable cognizance, so far as I can discover.

As equity before the revised statutes, applied the doctrine of limitation of actions, by analogy, to the construction and application of the statute in the courts of law, in like cases, it follows that these demands were barred in six years from the time that they accrued, unless they fall within some of the exceptions provided in the statute of limitations, or there is some fraud which deprives the defendant of its benefit.

The pleadings traverse the fraudulent concealment and other circumstances bearing on that question which are alleged in the bill, and the case is left to stand upon the statute itself.

*Third.* The proviso in the statute of limitations in force when these causes of action accrued, on which the complainant relies, is in these words: "and if any person against whom any cause of any such action shall accrue, shall be out of this state at the time the same shall accrue, the person who shall be entitled to such action shall be at liberty to bring the same within the times respectively above limited, after the return of the person so absent into this state." (1 Rev. Laws, 186, § 5.)

The language was precisely the same in the revision of the statutes made in 1801, 1 Kent and Radcliff, 564; and the provision was the same in the original act of 1788, 2 Greenleaf's Laws, 97, § 12.

First in order is the return of Hill to this state in 1820. I will however pass on to Davison's return, because if that were sufficient to cause the statute to commence running, the plea must be sustained.

It appears by the plea and answer that Davison, in the summer of 1833 sent his family to this city, intending to follow them and make his residence here; and on the 7th of March, 1834, he came to reside in this state, and continued actually and openly

to reside here with his family and to transact mercantile business, boarding a part of the time and keeping house the residue, from thence until March, 1835, when leaving his family, he went temporarily to South America on business. He returned again in July, 1835, and resided here as before till September following, when he again went to South America, leaving his family residing in a house which he had rented at Brooklyn. On the 5th April, 1834, he declared his intention of becoming a citizen pursuant to the act of Congress. He formed a business connection here, though his name was not put up on any sign, and he hired no store. The answer discloses where he resided while in this city, and various other matters which the bill required him to discover.

The complainant insists that the return of Davison does not bar his demand, because 1. by the true construction of the act of 1813, the debtor must reside here full six years after his first return, before the statute will protect him, and that the revised statutes are in this respect, declaratory of the prior statute of limitations ; and 2. if otherwise the residence must become known to the plaintiff ; or be so public and under such circumstances that the debtor might have been arrested by the plaintiff by the use of ordinary diligence and due means ; and that neither was the case here.

As to the first ground, the authorities are plainly against it.

In *Fowler* v. *Hunt*, 10 Johns. 464, the defendant stayed here about three months in 1793, and about four months in 1802, his family remaining at Demarara. The plaintiff came here with him in 1793, and knew of his being here in 1802. It was there contended for the plaintiff that such temporary visits were not a *return* to the state, and that a return with the intent to reside here was the only reasonable construction. But it was decided that the plaintiff was barred.

The same construction has been given to the proviso in the English statute, 21 James I, ch. 16, and the like statutes in other states which except from the bar the claims of non-resident plaintiffs. (*Strithorst* v. *Græme*, 3 Wils. 145 ; 2 W. Black. 723, S. C.; *Williams* v. *Jones*, 13 East, 439 ; *Faw* v. *Roberdeau's Executor*, 3 Cranch, 174.)

In New Jersey, the courts have gone so far under a statute similar to our revised laws, as to hold that the exception where the defendant is absent from the state, shall not avail a non-resident creditor whose demand is barred by the previous provisions of the act. (*Beardsley* v. *Southmayd*, 3 Green's R. 171; *Taberrer* v. *Brentnall*, 3 Harrison's R. 262.)

The Massachusetts decisions are similar to our own. In *White* v. *Bailey*, 3 Mass. 271, it was assumed that the debtor's return, if such as would enable the creditor, using reasonable diligence, to arrest him, would cause the statute to commence running. And S. P. in *Byrne* v. *Crowninshield*, 1 Pick. 263.

2. As to the other ground for insisting that Davison's return was not within the meaning of the proviso in the statute.

The case of *White* v. *Bailey*, just cited, shows that in Massachusetts the return would be sufficient. There the debtor was in the state but 18 days, and except on Sundays, was concealed, and that was of course held insufficient. But the court say that as soon as the creditor could have a beneficial remedy by attaching the body, then the statute should begin to run. The return must be with a design to dwell in the state, and not to lurk in it as a place of concealment. In 1 Pick. 263, *cited above*, there is a *quære*, whether even a temporary return will not suffice. In *Vans* v. *Higginson*, 10 Mass. 29, it was insisted that the plaintiff was not barred because he was at no time within the state, while the defendant was there after the return of the latter, but the court overruled the claim. They say it is an attempt " to make an exception which the statute of limitations has not made. When the defendant came within the state, the six years began to run as it respected him."

A very sensible distinction was taken by the Supreme Court of Vermont in *Mazozon* v. *Foot*, 1 Aikens' R. 282. They held that if the debtor come into the state having no intention to reside, he cannot avail himself of the statute without showing that the creditor had actual knowledge of such return and an opportunity to arrest him. But where he removes or returns into the state publicly, and with a view to dwell and reside permanently in the state, it is a return within the meaning of the statute of limitations; although he returns into an extreme part of the

state, remote from his former residence and from that of the creditor, and although the creditor should have no knowledge of such return.

In 3 Cranch, 174, *before cited*, the plaintiff claiming under the Virginia statute, was held barred, because he passed through Alexandria, a border town, and was a short time therein, but not as a resident.

And the case of *Fowler* v. *Hunt*, *ubi supra*, contains the decisive opinion of the Supreme Court, on this point, and it is according to the plain import of the statute and the dictates of good sense. The court says, "The coming from abroad must not be clandestine, and with an intent to defraud the creditor by setting the statute in operation and then departing. It must be so public and under such circumstances, as to give the creditor an opportunity by the use of ordinary diligence and due means, of arresting the debtor."

It is obvious that the creditor's knowledge of the defendant's return or coming here to reside, ought to have no influence in construing this clause. That would indeed be adding a new exception to the proviso in the statute.

Instead of adding to it, the Supreme Court in *Sacia* v. *De Graaf*, 1 Cowen, 356, held that they would not extend the exceptions in the statute by construction, to cases within the reason of the exceptions, but not within their letter; and in his illustrations the Chief Justice puts the case of the residence of the defendant in some obscure or remote part of the state, unknown to the plaintiff until six years have elapsed.

If legal rights are pursued in a court of equity, the legal operation of the statute must prevail.

At law, ignorance of the plaintiff's right, its fraudulent concealment, a mistaken idea that the defendant was discharged, and like grounds, for withdrawing claims from the effect of the statute of limitations, have been rejected in our courts. (*Troup* v. *Smith's Executors*, 20 Johns. 33; 1 Cowen, 356, *cited above*; *Leonard* v. *Pitney*, 5 Wend. 30; *Allen* v. *Mille*, 17 ibid. 202.)

And in *Humbert* v. *Trinity Church*, 24 Wend. 587, the Court for the Correction of Errors decided that neither fraud in obtaining the possession, knowledge of the possessor that his claim is

Didier v. Davison.

wrongful as well as fraudulent, his fraudulently concealing the injury, nor the plaintiff's ignorance of it till after the statute had become a bar; will excuse the negligence of the owner in not exhibiting his bill within the prescribed period. The same point as to his ignorance, was decided by the Court of Appeals in Kentucky, in *Thomas* v. *White*, 3 Litt. R. 177; and see *Cholmondely* v. *Clinton*, 2 J. & W. 155; and 4 Bligh's P. C. 1, 119.

We may therefore lay out of view the complainant's ignorance of Davison's residence here in 1834, 5.

It suffices that his return was open and public, and with the intent to reside in this state. And I may add, it is evident that the complainant might and would with very slight diligence, have found and arrested him here. If the complainant and his partner had not deemed this claim stale and wholly incapable of being enforced, they would have kept a vigilant eye on the movements of one so largely their debtor. It would not have been possible for him to have been absent with his family from Carthagena for a year and a half, without their learning it, and learning his new place of residence.

The complainant does not appear entitled to any sympathy from the court, or any effort to relieve him from the bar of the statute, which I have no doubt is an effectual defence to his demand.

I have not commented upon the case of *Bond* v. *Jay*, 7 Cranch, 350, cited by the complainant's counsel, because in this state, accounts between merchants were within the statutory bar of six years. (*Coster* v. *Murray*, 5 J. C. R. 522; *Barber* v. *Barber*, 18 Ves. 286.)

The plea must be allowed, and the usual order entered.