GEORGE H. YOUNG, Appellant, *v.* JAMES COOK, Appellee.

1. SPECIFIC LEGACY : ACTION FOR.—An action at law may be maintained for a specific legacy of a slave, and so, for the proceeds, if the slave be converted into money, under a power vested in the executor by the will.
2. STATUTE OF LIMITATIONS : SPECIFIC LEGACY.—The Statute of Limitations will run in favor of an executor, against the claim of a specific legatee.
3. SAME : DIRECT TRUSTS.—In cases of direct trusts, the Statute of Limitations will commence running in favor of the trustee, from the time the relation of trustee and *cestui que trust* is dissolved; and a final settlement between them, in relation to the trust estate, is such dissolution.
4. SAME : FRAUD.—Fraudulent concealment by the executor, will not prevent the bar of the Statute of Limitations against the claim of a specific legatee, unless it be of such a character as would prevent the legatee, by the use of ordinary diligence, from discovering his rights.
5. SAME.—The records of the Probate Court are open to the inspection of all the world: and a legatee under a will cannot set up a fraudulent concealment of the executor in relation to his rights, in answer to the plea of the Statute of Limitations, if by an examination of such records, he might have discovered the fraud.
6. IGNORANCE.—Ignorance and want of mental cultivation, form no excuse for a failure to assert one's rights, within the time prescribed by law.

7. STATUTE OF LIMITATIONS.—The Statute of Limitations is founded upon a wise public policy, and no exception ought to be engrafted on it, by judicial construction.

APPEAL from the Probate Court of Lowndes county. Hon. Stephen A. Brown, judge.

On the 12th day of December, A. D. 1854, James Cook, the appellee, filed his petition in the court below against the appellant, as executor of the last will and testament of Robert Shotwell, deceased, and afterwards his amended petition, in which he alleged in substance, that in 1835, one Viranda Cook, his sister, died, after having first made and published her last will and testament, by which said Robert Shotwell was appointed executor; that said Viranda gave him by will a negro girl, Lucretia, to be delivered to him when he attained the age of majority, or married; that she also impowered said Shotwell to sell said negro if he saw proper, and place the proceeds at interest on good security, to be paid to him as aforesaid: that said Shotwell, in 1835, sold said negro for $340, he himself being the purchaser, and made report of said sale to said court, and which was confirmed: that in 1845, soon after he became of age, he had a settlement with said Shotwell, and thereupon said Shotwell informed him that the sum of $313 was due him on account of said legacy, and that he executed his receipt therefor in full of the same: that he relied upon the statement of said Shotwell in relation to this matter, and that he deceived and defrauded him: that he is an ignorant and uneducated man, and was incapable of ascertaining or investigating his rights: that he has recently discovered, that a much larger sum was due him from said Shotwell: that he made the discovery in this wise,—that said Viranda Cook had in her said will, left a legacy of $100 to said Shotwell, during his life, and at his death that it was to be paid petitioner and his brother: that after Shotwell died, he went to the probate clerk of Lowndes county, to examine into this matter; and upon such examination, and through the advice and assistance of others, he had discovered the fraud perpetrated by Shotwell: that Shotwell had made a final report of his executorship, but it was confirmed without notice. He prays for an account, and distribution of his interest in the estate of said

Viranda Cook, and also that the said settlement, made between himself and Shotwell in 1845, in relation to the negro Lucretia be set aside, and that the executor of Shotwell, be compelled to account for the $340, and compound interest.

Young answered, and denied all fraud on the part of his testator, and relied upon the settlement made in 1845, and upon the lapse of time intervening between the settlement and the filing of the petition, and made his answer a demurrer. For cause of demurrer he assigned; first, that the Probate Court has no jurisdiction of the matter in the petition; second, that said petition is in the nature of a bill of review; third, that petition shows, that the estate of said Viranda was fully administered by said Shotwell: fifth, that petition shows, that the petitioner and Shotwell had a final settlement, in relation to the legacy, and that he had receipted to said Shotwell in full for the same.

It is unnecessary, under the opinion to the court, to set out the evidence.

The Probate Court decreed in favor of petitioner, setting aside the settlement made in 1845, and allowing interest at ten per cent. with annual rests; and Young, the executor of Shotwell, appealed.

In this court, the counsel on both sides argued elaborately the question of the jurisdiction of the Probate Court to set aside the settlement of 1845, and to give the relief granted; but it is deemed unnecessary to give their argument, except upon the point of the Statute of Limitations.

*James T. Harrison*, for appellant.
*The Statute of Limitations* was a complete bar.

It is settled in England, that the Statute of Limitations does not apply to a *legacy;* for the remedy to enforce it is only *in chancery.* The reason, however, fails where a remedy at law is provided by statute to recover legacies; and in such case the statute will bar a suit *in equity* as well as *at law.* Angell on Lim. (ed. 1829,) 356, 357; *Kane* v. *Bloodgood,* 7 Johns. Ch. R. 126; *Sowzer* v. *De Meyer,* 2 Paige, Ch. R. 574.

Our statute gives a full and complete remedy at law, and authorizes a specific legatee to maintain a suit for his legacy, without

the assent of the executor.   2 S. & M. 527, 530; 11 Ib. 76, 77;
9 Porter, 552; 1 Stewart, 580.

By the terms of the will, the legacy in this case was to be paid
when the legatee arrived at his majority, or married.   He became
of age, went of his own accord and demanded his legacy, which
was paid him, and a receipt " in full" was executed by him, to the
executor and trustee, on the 15th March, 1845.   In December,
1854, he files this petition in the Probate Court, against the exe-
cutor of the party with whom he settled, on the ground that he
had just discovered an error in the first settlement, and that at
the time he made the settlement and executed the receipt in full,
he was " altogether ignorant" of the fact, that a greater sum was
due him by the terms of the will, and that since the death of his
trustee, he has made the discovery.   Nearly *ten* years has elapsed.
No excuse is given, except that he " dont know much," and is
ignorant, but as he says, honest.   The will was duly recorded in
the county of his birth and continued residence.   The price the
negro sold for, was of record in the Probate Court.   It was a
plain and simple affair, about which there could be no complication.
It did not take a man of capacity, or one versed in accounting, to
comprehend the matter.   As soon as the legatee arrived at his
majority, he had sense enough to be right after the money, and
sign his name to a receipt for it " in full."   He knew the contents
of the receipt, and of the will, and how much the property sold
for, and that is all he pretends to know now.   No new fact has
come to light, and no discovery has been made, except that he is
now informed that " by the terms of the will," he was entitled to
nearly double the amount that was paid him.   The astute Mr.
Murdock, advises him to employ counsel, and he has all at once
become highly learned upon the subject of specific legacies, and
cent per cent.   He improves very fast under his able instructors.

When an act is done by a trustee purporting to be an execution
of his trust, he is thenceforth to be regarded as standing at-arm's
length from the *cestui que trust*, who is put to the assertion of his
rights, at the hazard of being barred by the Statute of Limitations.
And where there is a settlement between guardian and ward, after
the time of the ward's majority, it determines the trust, and the

time of prescription is counted from the date of the settlement, from which time the Statute of Limitations commences running; and if a *bill* was not filed in three years from that time, the bar is complete. *Caphinger* v. *Stokes*, Meigs, R. 175, 180; *Glover* v. *Lott*, 1 Strobh. Eq. R. 80; *Coleman* v. *Davis*, 2 Ib. 334; *Moore* v. *Porcher*, 1 Bailey, Eq. R. 198; *Starke* v. *Starke*, Car. Law Jour. 509.

Where an *infant* executed a receipt as a discharge in full of a legacy, to which he was entitled in right of his wife, and after four years had elapsed after the attainment of his majority, filed his bill against the executors to have the receipt set aside; held, that he was barred by the Statute of Limitations. *Coleman* v. *Davis*, 2 Strobh. Eq. R. 334.

And in *Glover* v. *Lott*, 1 Strobh. Eq. R. 80, the receipt for the legacy was signed by an *infant*, and the court say: "The release was a void contract, by reason of the infancy. But the transaction out of which it arose, gave currency to the statute; and having neglected his remedy for four years after he attained his majority, he is barred.

And in *Moore* v. *Porcher*, 1 Bailey, Eq. R. 198, it was decided that four years is time enough for a residuary legatee to discover errors, or suggest mistakes. See *Glover* v. *Lott*, 1 Strobh. Eq. R. 80; *Meyers* v. *Skrine*, 1 Harp. Eq. R. 179.

And the Statute of Limitations commenced running when the cause of action accrued, not when the plaintiff, who was *ignorant before*, comes to a *knowledge of his rights*. *Thomas* v. *White*, *Floyd*, &c., 3 Litt. 177; *Cook et al.* v. *Rives*, 13 S. M. 328; 24 Wend. 605.

And even in cases of *fraud* there must be diligence, and ordinary care and attention, seasonably to detect it. *Cook* v. *Rives*, 13 S. & M. 330; 1 Story, Eq. Jur. §§ 145, 148.

And in case of written instruments, relief will only be granted where a mistake is *clearly* made out in due time, by *satisfactory proofs*. 1 Story, Eq. § 157.

And it is no answer to a plea of the Statute of Limitations, that the action is founded on a breach of trust, *not discovered* till within the time of prescription. In order to take a case out of the statute even in chancery, on this ground, there must be proof of

*actual fraud and concealment by the party to be charged. Cole* v. *M'Gathy,* 9 Greenl. 131; and see Mar. & Yerg. 361; 1 Hill. (S. C.) R. 296; 1 Dana, 373; 10 Texas, 254.

There is no charge of fraud or concealment, even if that would avail any thing. There could be no concealment. The whole thing was patent, and open to inspection.

*Thomas Christian,* for appellees.

The question to be considered is, the lapse of time or Statute of Limitations. The executor, Young, has not pleaded the Statute of Limitations; and as he stands in the relation of an executor, we are unable to say whether the question will be considered by the court or not. With others than executors and administrators, the statute must be specially pleaded, or advantage taken of it by way of demurrer. *Patterson* v. *Ingraham,* 23 Miss. 87. But it is contended in argument by the defendant, that the lapse of time, (nine years) which has intervened since the petitioner has attained his majority, should restrain the court from granting the relief sought. To this we reply, that the Statute of Limitations does not bar cases like the present. In the case of *Wren et al.* v. *Gadsden,* 1 How. R. 365, the court say: "Administrators are trustees appointed by law, for the purpose of paying the debts of intestates, and of making distribution: *their very office is a trust.*" (The same language is equally applicable to executors.) The court in the same case further decide that, "In the case of an unsettled administration, the trust remains unexecuted, and must therefore, we apprehend, be regarded as subsisting between the trustee and *cestui que trust,* and can alone be put an end to as between them by a *bonâ fide* execution of the trust. But if the trust subsist, no doubt can exist that the statute will not attach." See the same doctrine laid down in 3 Johns. Ch. R. 216; 7 Ib. 123; 1 Ib. 316. A legacy is never barred, 10 Yerg. 94. A direct trust is never barred, 24 Miss. 80; Hill on Trustees, 263.

It is plain that the trust confided to Shotwell, by the will of Viranda Cook, cannot be considered as having been executed until full payment of the legacy has been made. If any part of it is still unexecuted and subsisting according to the decisions referred

to, the statute will not attach.    In *Johnson* v. *Johnson*, 5 Ala. 90, the general rule is stated to be, "that the Statute of Limitations will not run against a subsisting and continuing trust," but that, "cases may exist in which notwithstanding the trust has never been put an end to, it would after a great lapse of time be the duty of a court of chancery to refuse its aid, and presume from such unreasonable delay, either satisfaction or abandonment of the claim."   "There is no hardship or injustice," say the court in that case "in requiring a party to assert his rights within a reasonable time *after he becomes cognizant of them*, and all legal impediments are removed; whilst, on the other hand, the repose of society imperiously demands, that unreasonable delay in bringing suits, should not be tolerated;" and hence they say, "that even where there is a subsisting trust, *unless the party was ignorant of his rights*, courts of equity, after a great lapse of time presume a satisfaction."

In that case the court refused the relief sought, because it appeared that the plaintiff was well advised of his rights, that he took counsel and advice of his friends, was familiar with the amount and value of the property, and yet delayed for some eleven years to assert his rights after acquiring a full knowledge of them; and even in that refusal the court was not unanimous, one of the judges (Goldthwaite) dissenting, and insisting that he was entitled to full relief.

The judge of probate, in his written opinion delivered in this case says: "Applying these principles to the case now before the court, I can find nothing in the testimony to show that the petitioner ever had a full knowledge of his rights: on the contrary, every circumstance of the case tends to establish the fact, that from the time of giving the receipt in 1845, until after the death of Shotwell, he fully believed that he had received all that was due him, and never even suspected otherwise.   "A man of small capacity and of no education; one that scarcely knows his legal rights," is the language of the witness Murdock.   So incompetent was he to investigate and ascertain his rights, that it became necessary for some person to examine the will of Viranda Cook for him in reference to the $50 coming to him on the death of Shotwell;

Young *v.* Cook.

and the witness Murdock gave him the first information that he ever had that Shotwell had not paid him the full amount he was entitled to. Since the fact was brought to his knowledge it will be admitted that he has been *diligent."*

It is alleged, that the receipt given by the petitioner, in 1845, after he was twenty-one years of age, is conclusive against him. Ordinarily, a receipt is but *primâ facie* evidence of payment, and can be rebutted by proof, 5 Ala. 224. A receipt in full is not conclusive on the parties, but is merely *primâ facie* evidence of what it purports to be, and may be opened if unfairly obtained, 3 U. S. Dig. 125, and authorities there cited. But the rule of law is different where receipts are obtained from persons just coming of age. In such cases, the burthen of proof is not upon the person giving the receipt, to show that it was not in full, although it purports to be, but it is on the party pleading the receipt, and he must show that the whole amount due was *bonâ fide paid.* In *Johnson* v. *Johnson,* 5 Ala. 90, it is said, " Contracts made between trustee and *cestui que trust,* or between guardian and ward, soon after the latter comes of age, or one standing in the relation of guardian, are viewed with so much jealousy by courts of equity, that they are voidable by the latter, if within a reasonable time he seeks to avoid the contract. Such a contract can be supported only where the trustee or guardian, previous to the contract, has made such a full and fair disclosure of all the facts or circumstances which have come to his knowledge, as such, as to enable the other party to deal with him on equal terms. A purchase made by an administrator of one of the distributees shortly after he came of age, of all his interest in his father's estate,—the administrator having rendered no inventory of the estate, or stated an account, and the purchase being made at a grossly inadequate price, is considered fraudulent and voidable at the election of the distributee, if application had been made for that purpose within a reasonable time afterwards, or within a reasonable time after obtaining knowledge of the fraud."

Goldthwaite, in the above case, on page 106, says : " The universal rule is, that if a trustee will deal with his *cestui que trust,* he must always be prepared to show that the dealing is entirely

fair, made upon the fullest communication of all the facts and cir-
cumstances connected with the trust property, and upon the pay-
ment of a consideration fully adequate. *It does not rest with the
cestui que trust to show by evidence,* that the dealing was unfair,
or that an advantage had been taken of him, *but the onus is cast
on the trustee to support it.* A multitude of cases (says the judge,)
might be cited in support of this principle, but one of recent deci-
sion will be sufficient for reference." *Hunter* v. *Atkins,* 1 Coop.
S. C. 464. Both the majority and minority of the court sustain
the principle, that a purchase made, or a settlement with, or a re-
ceipt taken from one standing in the relation of a *cestui que trust*
with trustees, must be after a fair showing, for a full and adequate
consideration, or the full amount paid ; and the trustee must be
always prepared to show the fact.

The case of *Fish* v. *Miller,* 1 Hoff. Ch. R. 267, was not the case
of a purchase, but a release, or receipt given by a ward just come
of age to his guardian. The chancellor reviews all the cases upon
this subject, and decides, that " a release obtained from a ward
just arrived at age, casts upon the guardian proof of every thing,
to make it valid, especially a full, entire, and minute account.
The discharge to a guardian is not to be precipitated ; there must
be time for consultation, a full exposition of the estate, of its ad-
ministration ; and a guardian who has settled his accounts in secret,
must prove all this." " Although acquiescence by a ward with his
guardian's accounts, can be inferred from lapse of time, omission
to complain, and other circumstances—while confirmation is to be
established by evidence—*yet they both depend upon a perfect know-
ledge of rights, facts, and of the ability to obtain relief.*"

The principle is laid down in all the authorities, that the defend-
ant is bound to prove the fairness of the settlement—which he has
it always in his power to do, or ought to have it—otherwise, *it is*
said that it would be a denial of *justice,* and open the doors to
great and grievous frauds, if the burthen of proof was thrown on
the complainant, to show the settlement unfair—that the amount
of money named in the receipt was not paid, or that the complain-
ant was ignorant of his rights, or the true condition of the estate—
for it would be impossible to make such proof.

The chancellor says, in the case above alluded to: "I take it to be settled, that where a release is obtained from a ward freshly arriving at age, the whole burthen is cast upon the guardian, of proving every thing essential to make the release a valid discharge."

Fortunately for us, the amount of money paid is mentioned in the receipt. It does not say for balance of amount; but for $313.66, in full for legacy, &c.

The case of *Say's Executors* v. *Barnes*, 4 S. & R. 112, is a case almost identical with the case before the court. In the case cited, a settlement was had between the guardian and his ward, upon the ward's coming of age, and a receipt in full given by the ward. The guardian died, and the ward cited the executor of the guardian to a settlement in the *Orphans' Court*, as we have done. The executor pleaded the settlement, and receipt in full given by the ward in bar of the action. There was no charge of fraud, but simply that he had not paid the ward the full amount due him. The Orphans' Court overruled the objection, ordered a new settlement, and referred the case to an auditor, to state an account. From the decision of the judge of probate, an appeal was taken to the Supreme Court. It was held by the Appellate Court— "That the receipt in full was not conclusive, and did not stand in the way of a new settlement, under the authority of the Orphans' Court, though there was no fraud or circumvention." Chief Justice Tilghman, in delivering the opinion of the court, says: "That it is in vain to argue, that when a ward comes of full age, and makes a settlement with his guardian, attended with no circumstances of fraud or circumvention, it is to be considered as a settlement between two persons who had never stood in the situation of guardian and ward. *I see and I feel the difference.* There is no need of authority on so plain a subject : but the books are full of authority. Settlements soon after coming of age, are always viewed by courts with a watchful eye."

In the case of *Williams* v. *Powell*, 1 Iredell, Eq. 460, the principle is laid down that agreements and contracts between guardian and ward, just come of age, are set aside upon grounds of public utility, and to prevent fraud, and not merely to redress it. The

whole doctrine is laid down in Story, Eq. §§ 317–323, as to administrators, guardians, trustees—in fact every relation of a trust or confidential character. The policy of the law is to prevent fraud, and not to redress it. When the dealings are fair, and free from the taint of fraud, ignorance of law, ignorance of fact, mistake, or oversight, will be looked into.

From the above authorities, there can be no doubt that the testator's estate is liable, notwithstanding the receipt.

FISHER, J., delivered the opinion of the court.

This was a petition filed by the appellee against the appellant, as executor of Robert Shotwell, deceased, in the Probate Court of Lowndes county.

The petition alleges that Viranda Cook, having made her will, and appointed Robert Shotwell executor thereof, died in the early part of the year 1835; that the said testatrix, by her said will, bequeathed to the petitioner, who was her brother, and at the time a minor, a certain slave, to be delivered to him on attaining his majority, with power in the said executor, if he thought it proper, to sell the said slave, and to place the money at interest until he arrived at full age, when the same was to be paid over to him; that the executor sold the slave for $340, in the year 1836, and reported the sale to the Probate Court, and that the same was confirmed. It further appears that the petitioner, having arrived at majority in the spring of 1845, received from the said executor the sum of $313.66, and executed to him a receipt in full of said legacy.

It also appears that Shotwell died in the year 1852, and that the petitioner, some short time thereafter, discovered that a much larger sum was due to him than he received in 1845: that petitioner is an ignorant, illiterate man, and was not aware of his rights in said estate, until he was made acquainted therewith through the agency of others, after the death of Shotwell; and this is assigned as the reason for the long delay in commencing proceedings to cancel the said receipt, and to collect the alleged balance due on account of said legacy.

The question as to the jurisdiction of the Probate Court to

Young *v.* Cook.

grant the relief sought by the petitioner, may be passed over, as its decision is not absolutely necessary, under the view which we have taken of another point in the case.

It must be admitted, that whatever debt Shotwell owed the petitioner, he owed him as an individual, and not in his character of executor. It was a personal demand against Shotwell, and due when the petitioner attained his majority. Shotwell was then liable to a suit at law, under the statute, on refusing to make payment according to the provision contained in the will. Being a special legacy, and in all respects a money demand, like any other debt, the Statute of Limitations commenced running from the time the cause of action accrued, and is a complete bar, unless something is shown to take the case out of the operation of the statute. Fraud and concealment alone, will not be sufficient for this purpose, unless the concealment was such as to prevent the petitioner, by the use of ordinary diligence, from discovering his rights. It cannot be pretended, for a moment, that there was any concealment, because the records of the court, open to the inspection of the world, showed the sale of the slave, the date of the sale, the price for which she sold, and the will under which the petitioner claimed. His information, at the end of seven years, was obtained from this source. Why was it not obtained at the end of one or two years? He says that he is an ignorant man, and could not, therefore, if he attempted an investigation, ascertain wherein he had been injured or wronged. The answer to that position is, that the law has not provided for such a case, and perhaps, so long as it can only prescribe or lay down general rules, it never will. It is impossible to foresee the evil which would result from such an exception engrafted upon the Statute of Limitations. Ignorance, would always be the excuse urged by those who had been tardy in asserting their rights.

But it is said, that this was a settlement made with the petitioner, almost immediately after he became of age, and that the executor must show the settlement to have been in all respects fair, and made upon a full disclosure of all the facts. The general correctness of this proposition may be admitted. If the petitioner had within a reasonable time, interposed his objection to the settle-

ment, the rule would have applied to his case, and under its operation he could have obtained proper and ample redress. But what is a reasonable time? The answer is, the time in which the statute constitutes a bar to the action; for the plain reason, that it commenced running the moment the cause of action accrued; and nothing is shown to stop its running. If complaint had been made within this time, the executor might have been prepared with evidence to defeat the claim. If he were now living after this lapse of time, he might not be able to make this proof, though it may have once existed. The statute is founded in a wise policy, though justice may occasionally be defeated under its operation. Society has an interest in certain and fixed rules of law, which can be easily understood, and applied to the common affairs of life. Exceptions in a statute, like exceptions to general rules, often render the law obscure or difficult of application. If the exception is only such as the statute itself has made, the danger of being misled is trifling when compared with judicial exceptions, arising out of what is supposed to be the equity of the statute. It may be said, however, that Shotwell was under the will a trustee, and that the statute does not run in such case. This is true, in regard to express trusts, and this may be admitted to be of that character. But it is only true, so long as the character of trustee and *cestui que trust* exists. By the settlement made in March, 1845, both parties treated the trust as satisfied. The petition, however, says, that the trustee divested himself of his character of trustee, by fraudulent means. Admitting this to be true, the fraud, to avail the party, must have been such, that he could not by the use of reasonable diligence have discovered it, within the period prescribed by the statute. He could have made this discovery, as well in one year after the commission of the fraud, by proper diligence, as in the time alleged in his petition.

Decree reversed, and petition dismissed, except as to such rights as the petitioner may claim, as a *distributee* in the estate; for which purpose the cause may be remanded.